IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANCIS SMITH, | ) |
| Petitioner, | ) Civil Action No. 2:20-cv-1969 |
| v. | ) |
| | ) Magistrate Judge Patricia L. Dodge |
| WARDEN ORLANDO HARPER, *et al.*, | ) |
| Respondents. | ) |

## MEMORANDUM

Before the Court[1] is the Amended Petition for a Writ of Habeas Corpus (ECF 13) filed by Francis Smith under 28 U.S.C. § 2254. For the reasons set forth below, the Court will deny the Amended Petition and deny a certificate of appealability as to each claim.

**I.      Relevant Background**[2]

The procedural background of Smith's state criminal proceedings is long and complicated. The following is a summary of only what is necessary to the disposition of this federal habeas case.

In 2010, Smith was charged in the Court of Common Pleas of Allegheny County at criminal docket number CP-02-CR-6061-2010 ("Case #1") with the following offenses: Counts 1 through 10, Burglary; Count 11, Forgery; Counts 12 through 16, Theft by Unlawful Taking or Disposition; Count 17, Theft by Deception; and Count 18, Criminal Mischief.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2] Respondents electronically filed as exhibits to their Answer (ECF 24) relevant parts of the state court record. The documents will be cited to as follows: "ECF 24-1 at pp. ___." Respondents also submitted Smith's original state court record, which includes all relevant transcripts.

Around the same time, Smith was also charged at criminal docket number CP-02-CR-6106-2010 ("Case #2") with these offenses: County 1, Burglary; Count 2, Access Device Fraud; Counts 3 and 4, Forgery; Counts 5 and 6, Theft by Deception; and Counts 7 and 8, Theft by Unlawful Taking or Disposition.

The Common Pleas Court appointed Attorney Candace Ragin to be Smith's counsel. In March 2011, Smith appeared before the court and entered a negotiated guilty plea that included a sentence of two to four years' incarceration; Recidivism Risk Reduction Incentive ("RRRI") eligibility; probation to be set by the court; and restitution to be determined by the Commonwealth. (Plea Hr'g Tr., 3/14/11, at pp. 52-53, 60-67; ECF 24-1 at pp. 112-21.) Despite the existence of a set sentence, Smith requested a presentence investigation report. (*Id.* at p. 68.) The court granted Smith's request and postponed sentencing. (*Id.* at 68-70.)

The Common Pleas Court sentenced Smith on October 4, 2011. In Case #1, the court sentenced him as follows: Count 1, a term of two to four years of incarceration and RRRI; Count 2, three years of probation to run consecutive to the term of incarceration imposed at Count 1, and $1,750.00 in restitution; Counts 3 through 10, three years of probation at each count with all terms to run concurrent with the probationary term set at Count 2. No further penalty was imposed at Counts 11 through 18. (*Id.* at pp. 131-33.)

In Case #2, at Count 1, the court sentenced Smith to a term of three years probation to be served consecutive to the probation imposed in Case #1, and restitution of $3,848.50. No further penalty was imposed at Counts 2 through 8. (*Id.* at pp. 135-36.)

Smith filed a counseled notice of appeal to the Superior Court of Pennsylvania in which he raised a claim that is not relevant to this habeas case. (*Id.* at pp. 147, 160-62.) The Superior Court

affirmed Smith's judgment of sentences in *Commonwealth v. Smith*, No. 1714 WDA 2011, slip op. (Pa. Sup. Ct. 2012) ("*Smith I*") (*Id*. at pp. 252-66.)

Smith then filed a pro se petition for collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.* In this first PCRA proceeding, Smith claimed, among other things, that his non-burglary convictions in Cases #1 were precluded by 18 Pa.C.S. § 3502(d).[3] He also claimed that his guilty pleas were not knowingly and voluntarily entered for various reasons and that Attorney Ragin was ineffective for failing to raise these issues when she represented him. (ECF 24-1 at pp. 339-42, 352-53, 382-83.)

The Common Pleas Court appointed Attorney Veronica Brestensky to represent Smith in this PCRA proceeding. Attorney Brestensky subsequently filed an application for leave to withdraw and an accompanying letter and 27-page brief pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. 1988) (en banc), which set forth the claims Smith was raising and explained why none of them were meritorious. (ECF 24-1 at pp. 361-97.)

The Common Pleas Court granted Attorney Brestensky's request to withdraw from the case and dismissed Smith's PCRA petition without a hearing because he failed to plead any claim of arguable merit. (ECF 24-1 at pp. 398, 405, 420-26.) Smith proceeded pro se in his appeal. The

---

[3] At the time of Smith's convictions, § 3502, which defines the crime of Burglary, provided at subparagraph (d): "Multiple Convictions. A person may not be convicted both for burglary and for the offense which it was his intent to commit…unless the additional offense constitutes a felony of the first or second degree." In an opinion the Common Pleas Court later issued in Smith's PCRA case, the court explained that Smith's assertion that § 3502(d) was violated in his case lacked merit, noting: "Smith…claims that [§ 3502(d)] prevents this Court from convicting him on the underlying non-burglary counts… However, conviction for purposes of § 3502(d) refers to the judgment of sentence not the verdict. *Commonwealth v. Couch*, 731 A.2d 136, 144 (Pa. Super. 1999)…. Therefore, [Smith's] plea on the underlying offenses was valid as he was sentenced only on the burglaries." (Op., 11/1/13, at pp. 5-6.)

3

Superior Court dismissed this appeal because Smith's brief failed to comply with the applicable rules of appellate procedure. *Commonwealth v. Smith*, No. 1512 WDA 2013, slip op. (Pa. Super. Ct. June 11, 2014) ("*Smith II*"). (ECF 24-1 at pp. 538-43.) Smith did not petition the Pennsylvania Supreme Court for an allowance of appeal.

Smith was eventually released from the term of incarceration imposed in Case #1 and began serving the probation imposed in that case. At some point, Smith's probation officer took a urine sample that tested positive for cocaine. A few months later, Smith's probation officer encountered him under the influence of alcohol. The probation officer tried to take Smith into custody but Smith became combative and resisted, causing injuries to his probation officer in the process. As a result of this incident, Smith was charged and convicted of resisting arrest and disorderly conduct.

This incident also initiated probation revocation proceedings. Attorney Jacob C. McCrea was appointed to represent Smith in these proceedings.

On December 9, 2016, Smith appeared before the Common Pleas Court for a probation violation hearing, which in Pennsylvania is known as a *Gagnon II* hearing.[4] Following the hearing, the court revoked the term of probation that Smith was serving in Case #1 and sentenced him to a term of incarceration of two to five years at Count 1, to be followed by a term of six years of

---

[4] Under Pennsylvania law, a defendant is generally entitled to two hearings before revocation of parole or probation. *Gagnon v. Scarpelli*, 411 U.S. 778 (1973). The purpose of the first (*Gagnon I*) hearing is to "ensure against detention on allegations of violation that have no foundation of probable cause." *Commonwealth v. Perry*, 385 A.2d 518, 520 (Pa. Super. Ct. 1978). The purpose of the second (*Gagnon II*) hearing is to determine whether facts justify revocation of parole or probation. *Id.*

4

probation at Count 2.[5] (ECF 24-1 at pp. 575-78.) This sentence was to be served consecutively to the sentence imposed on his recent convictions of resisting arrest and disorderly conduct.

Smith, though counsel, filed an appeal to the Superior Court in which he raised claims not relevant to this habeas case. (ECF 24-1 at pp. 586-600, 610-21.) The Superior Court affirmed his probation violation sentence in *Commonwealth v. Smith*, No. 63 WDA 2017, slip op. (Pa. Super. Ct. April 18, 2018) ("*Smith III*"). (ECF 24-1 at pp. 743-54.) The Pennsylvania Supreme Court denied a petition for allowance of appeal. (*Id.* at p. 852.)

Smith then filed a pro se PCRA petition in which he alleged that Attorney McCrea was ineffective in his representation of him during the probation violation proceedings. (*Id.* at pp. 853-56.) Although the Common Pleas Court appointed Smith new counsel to represent him in this PCRA proceeding, Smith maintained that he wanted to proceed pro se. Following a hearing on the matter, the Common Pleas Court granted Smith's request to represent himself. Smith later filed amendments to his pending PCRA petition. (*Id.* at pp. 883-98.)

The Common Pleas Court subsequently dismissed Smith's PCRA petition. It held that two of his claims were waived, one claim was previously litigated, one claim was improperly pled, and four other claims had no merit. (*Id.* at p. 930.) Smith filed a pro se appeal, which the Superior Court dismissed for failure to comply with the applicable rules of appellate procedure. (*Id.* at p. 943.)

Smith later filed another pro se PCRA petition. (*Id.* at pp. 968-71.) The Common Pleas Court dismissed this petition as untimely under the PCRA's one-year statute of limitations. (*Id.* at p. 1001.)

---

[5] Smith had not yet begun serving the sentence imposed in Case #2 so that sentence was not affected by his probation violation.

Smith then filed in this Court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[6] (ECF 5.) He subsequently filed the Amended Petition (ECF 13) which is his operative pleading. In it, Smith raises these claims:[7]

Claim 1: His 2011 guilty pleas in Cases # 1 and #2 were not knowingly and voluntarily entered because the Common Pleas Court did not sentence him in accordance with the terms of the plea agreement (specifically, it improperly imposed restitution and "failed to impose the period of incarceration of 2-4 years (18 months RRI minimum) concurrently on all charges as per the plea agreement"). Additionally, his convictions on the non-burglary charges violated 18 Pa.C.S. § 3502(d), which pertains to situations when a defendant is charged with burglary and other non-burglary offenses; and,

Claim 2: The probation violation sentence he received in 2016 is "illegal as [he was] already…sentenced on the crime committed therein and that sentence was not for a felony 1 or 2. As such, the court lacked jurisdiction to impose any sentence for a violation of probation as any such sentence would violate 18 Pa. C.S. § 3502(d)."

(ECF 24 at pp. 1-2; ECF 13 at pp. 6-8.) Smith also claims that his trial counsel in Cases #1 and #2 (Attorney Ragin) was ineffective for failing to raise the errors listed in Claim 1, and that trial counsel in his probation violation proceeding (Attorney McCrea) was ineffective for failing to raise the errors listed in Claim 2. (*Id.*)

Respondents have filed the Answer (ECF 24) and the state court record and Smith has filed his Reply (ECF 28).

---

[6] Section 2254 confers jurisdiction on this Court to entertain a habeas petition filed by a state prisoner who is contending that "he or she is in custody in violation of the Constitution…of the United States." 28 U.S.C. § 2254(a).

[7] In the Amended Petition, Smith listed his claims as four grounds for relief. In the Answer (ECF 24), the Respondents combined grounds 1, 2 and 3 to avoid repetition because they all challenged the validity of Smith's 2011 guilty pleas. In the Reply (ECF 28), Smith did not object to the Respondents' decision to combine the first three grounds for relief listed in the Amended Petition as the claim identified herein as "Claim 1."

6

**II.     Discussion**

The "exhaustion doctrine" requires that a state prisoner raise his federal habeas claims in state court through the proper procedures before he litigates them in a federal habeas petition. *See, e.g.*, *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). It is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). It "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[.]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Additionally, and importantly, a petitioner must have "invoke[d] one complete round of the State's established appellate review process[,]" in order to satisfy the exhaustion requirement. *O'Sullivan*, 526 U.S. at 845. In Pennsylvania, this requirement means that a petitioner in a non-capital case such as this one must have first presented every federal constitutional claim raised in his federal habeas petition to the Superior Court either on direct or PCRA appeal. *See, e.g.*, *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

The doctrine of procedural default, like the doctrine of exhaustion, is "grounded in concerns of comity and federalism," *Coleman*, 501 U.S. at 730. To summarize, it provides that a Pennsylvania state prisoner in a non-capital case defaults a federal habeas claim if he: (a) failed to present it to the Superior Court and he cannot do so now because the state courts would decline to address the claims on the merits because state procedural rules (such as the PCRA's one-year statute of limitations) bar such consideration; or (b) failed to comply with a state procedural rule when he presented the claim to the state court, and for that reason the Superior Court declined to address the federal claim on the merits. *See, e.g.*, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 851-56 (1999) (Stevens, J. dissenting) (describing the history of the procedural default doctrine); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Lines v. Larkins*, 208 F.3d 153, 162-69 (3d Cir. 2000).

As the Supreme Court has recently explained:

> State prisoners . . . often fail to raise their federal claims in compliance with state procedures, or even raise those claims in state court at all. If a state court would dismiss these claims for their procedural failures, such claims are technically exhausted because, in the habeas context, "state-court remedies are. . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability." *Woodford v. Ngo*, 548 U.S. 81, 92-93, 126 S. Ct. 2378, 165 L. Ed.2d 368 (2006). But to allow a state prisoner simply to ignore state procedure on the way to federal court would defeat the evident goal of the exhaustion rule. *See Coleman*, 501 U.S. at 732, 111 S. Ct. 2546. Thus, federal habeas courts must apply "an important 'corollary' to the exhaustion requirement": the doctrine of procedural default. *Davila [v. Davis]*, 582 U.S., at ___, 137 S. Ct. [2058], 2064 [2017]. Under that doctrine, federal courts generally decline to hear any federal claim that was not presented to the state courts "consistent with [the State's] own procedural rules." *Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S. Ct. 1587, 146 L. Ed.2d 518 (2000).
>
> Together, exhaustion and procedural default promote federal-state comity. Exhaustion affords States "an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights," *Duckworth v. Serrano*, 454 U.S. 1, 3, 102 S. Ct. 18, 70 L. Ed.2d 1 (1981) (per curiam), and procedural default protects against "the significant harm to the States that results from the failure of federal courts to respect" state procedural rules, *Coleman*, 501 U.S. at 750, 111 S. Ct. 2546. Ultimately, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without [giving] an opportunity to the state courts to correct a constitutional violation," *Darr v. Burford*, 339 U.S. 200, 204, 70 S. Ct. 587, 94 L .Ed. 761 (1950), and to do so consistent with their own procedures, *see Edwards*, 529 U.S. at 452-453, 120 S. Ct. 1587.

*Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022).

When a claim is procedurally defaulted a petitioner can overcome the default if he shows "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Coleman*, 501 U.S. at 750. "'Cause' under the cause and prejudice test must be something *external*

8

to the petitioner, something that cannot fairly be attributed to him[.]" *Id.* at 753 (emphasis in original).[8]

Respondents assert that the Court should deny Smith's claims because he procedurally defaulted them and there are no grounds to permit him to avoid his default.[9] In his Reply (ECF 28), Smith admits that he procedurally defaulted his claims but asserts that under the rule of *Martinez v. Ryan*, 566 U.S. 1 (2012) his default should be excused because his PCRA counsel failed to litigate his claims.[10]

---

[8] A petitioner may also avoid the default of a claim by demonstrating that the federal habeas court's failure to consider it will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *see, e.g.*, *Lines*, 208 F.3d at 160. This type of "gateway" actual innocence claim requires newly presented evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup v. Delo*, 513 U.S. 298, 316 (1995); *see also McQuiggin v. Perkins*, 569 U.S. 383 (2013); *House v. Bell*, 547 U.S. 518 (2006); *Reeves v. Fayette, SCI*, 897 F.3d 154, 157 (3d Cir. 2018). The Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare[.]" *McQuiggin*, 569 U.S. at 386. Smith does not argue that he can avoid the default of his claims under the fundamental miscarriage of justice doctrine and there is nothing in the record that would indicate that this is one of the rare cases in which it would apply.

[9] Respondents also assert that Claim 1 is time barred under the applicable statute of limitations, which was enacted by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and is codified at 28 U.S.C. § 2244(d). Smith counters that his probation revocation sentence is an intervening judgment that reset AEDPA's statute of limitations for all of his claims. The Court will not address the statute-of-limitations issue "[b]ecause AEDPA's limitation period is not jurisdictional," *Jenkins v. Sup't of Laurel Highlands*, 705 F.3d 80, 89 (3d Cir. 2013) (citing *Holland v. Florida*, 560 U.S. 631 (2010)), and each of Petitioner's claims are clearly procedurally defaulted and denied for that reason.

[10] To the extent that Smith has raised a stand-alone claim that his PCRA counsel were ineffective, those claims are not cognizable, a fact codified by statute at 28 U.S.C. § 2254(i), which provides that "[t]he ineffectiveness of counsel during Federal or State collateral post-conviction proceedings shall not be ground for relief in a proceeding arising under section 2254." *See also Coleman*, 501 U.S. at 752-53 ("There is no constitutional right to an attorney in state post-conviction proceedings ... Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.").

The general rule is that, because there is no federal constitutional right to counsel in a PCRA proceeding, a petitioner cannot rely on PCRA counsel's ineffectiveness to establish the "cause" necessary to overcome the default of a federal habeas claim. *See, e.g.*, *Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017). In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court announced a narrow exception to this rule. It held that in states like Pennsylvania, where the law requires that claims of ineffective assistance of trial counsel be raised for the first time in a collateral proceeding,[11] a petitioner may overcome the default of a *claim of trial counsel's ineffectiveness.* To do so, the petitioner must show: (1) the defaulted claim of trial counsel's ineffectiveness is "substantial" and (2) PCRA counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984) for (3) failing to raise that claim in the "initial review collateral proceeding" (meaning to the PCRA court). *Martinez*, 566 U.S. at 17.

The holding in *Martinez* is limited to defaulted claims asserting that *trial counsel was ineffective*. *See, e.g.*, *Davila*, 137 S. Ct. at 2062-70. It does not apply to any other type of defaulted claim. *Id.* Thus, the only claims brought by Smith to which *Martinez* possibly could help him avoid a default are his claims that his trial counsel were ineffective. Moreover, since Smith, at his own insistence, proceeded pro se in the PCRA proceeding that followed his 2016 probation revocation proceeding, the holding in *Martinez* does not apply to Smith's claim that his trial counsel for the probation violation proceeding (Attorney McCrea) was ineffective for failing to raise the alleged errors listed in Claim 2. Since Smith did not have PCRA counsel in the PCRA proceeding that

---

[11] In Pennsylvania, a defendant typically may not litigate ineffective assistance of trial counsel claims on direct appeal. Such claims must be raised in a PCRA proceeding. *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002) (abrogated in part on other grounds by *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021)).

10

followed his probation violation sentence, the failure to raise any claim in it that Attorney McCrea was ineffective falls only on Smith's shoulders.

Thus, the only remaining ground for relief to examine is Smith's assertion that his trial counsel in Cases #1 and #2 (Attorney Ragin) was ineffective for failing to raise the errors list in Claim 1. (ECF 13 at pp. 5-8; ECF 24 at pp. 1-2.) The holding of *Martinez* does not provide grounds for Smith to avoid the default of this claim either. Smith makes essentially boilerplate allegations that he can overcome the default of his claim that Attorney Ragin was ineffective because his PCRA counsel (Attorney Brestensky) was also ineffective. He puts forth no grounds to excuse his default on this basis, however.

In any event, Smith has not shown that his claim that Attorney Ragin was ineffective is "substantial," which is *Martinez's* first element. The Court of Appeals has explained that a claim that trial counsel was ineffective is "substantial" if it has "some merit." *Workman v. Sup't Albion SCI*, 915 F.3d 928, 938 (3d Cir. 2019).[12] The record does not support Smith's assertion that his guilty plea was not knowingly and voluntarily entered because the trial court did not sentence him in line with the plea agreement. The sentences Smith faced, and the fact that the court would likely impose a "large amount of…restitution," were explained to him before he entered his guilty pleas. (Plea Hr'g Tr., 3/14/11, at pp. 53-70). As for Smith's assertion that his convictions violated 18 Pa.C.S. § 3502(d), the Common Pleas Court held that it did not, *see* footnote 3 *infra,* and this

---

[12] The evaluation is the same one that a federal court undertakes when it considers whether to grant a certificate of appealability. *Workman*, 915 F.3d at 938; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Thus, a petitioner "must 'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should be resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Martinez*, 566 U.S. at 14).

Court is bound by the court's determination of state law.[13] *See, e.g.*, *Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). Thus, Smith has not shown that there is a reasonable probability that the claims of error he asserts that Attorney Ragin should have raised would have been successful if he had raised them.

Based on the above, Smith procedurally defaulted all claims that he raised in the Amended Petition. There are no grounds to excuse his default of any claim. Accordingly, each claim is denied.

## III. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from…the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473,

---

[13] Moreover, since that court imposed no sentences on Smith's non-jury burglary convictions, Smith has not established that he was prejudiced by trial counsel's failure to argue that § 3502(d) was violated.

484 (2000). Applying that standard here, jurists of reason would not find it debatable whether all of Smith's claims should be denied because they are procedurally defaulted. Accordingly, the Court will not issue a certificate of appealability on any of Smith's grounds for relief.

### IV.  Conclusion

Based on the above, the Court will deny Smith's Amended Petition and will deny a certificate of appealability with respect to each claim.

An appropriate Order follows.


Date:  December 9, 2024                                    /s/ Patricia L. Dodge
                                                           PATRICIA L. DODGE
                                                           United States Magistrate Judge